615 S.E.2d 704 (2005)
In the Matters of C.L.C., K.T.R., A.M.R., E.A.R., Minor Children.
No. COA04-471.
Court of Appeals of North Carolina.
July 19, 2005.
John C. Adams, Asheville, for petitioner-appellee.
Charlotte Gail Blake, Jefferson, for respondent-appellant.
Judy N. Rudolph, Asheville, for appellee Guardian ad Litem.
*705 GEER, Judge.
Respondent mother L.M. appeals from the judgment terminating her parental rights to her four children, C.L.C., K.T.R., A.M.R., and E.A.R. On appeal, the mother argues primarily that the judgment must be reversed because the trial court's and DSS' failure to comply with certain statutory time deadlines deprived the trial court of jurisdiction. Since, however, L.M. has failed to demonstrate prejudice from the missed deadlines and because we do not find her other arguments on appeal meritorious, we affirm.

Facts
This case began in March 2001 when the Buncombe County Department of Social Services ("DSS") received a report that L.M. ("the mother") was not properly supervising her four children, that the father of one child whipped him with a belt, that there was severe domestic violence between the mother and father, and that the mother failed to take her children to medical and dental appointments. After substantiating the report, DSS began working with the family. The mother frequently told a social worker that she could not handle the responsibility of parenting her children and asked that the children be placed elsewhere. On 26 July 2001, the mother voluntarily placed the children in the Angel Watch program.
The mother located appropriate housing and the children were returned to her on 1 November 2001. The mother agreed not to allow her boyfriend to be around the children until he completed substance abuse treatment. In addition, any visitation between the children and their father was required to be supervised because of the history of severe domestic violence between the mother and father. DSS learned, however, that the mother had, during the following two weeks, allowed her boyfriend to be around the children on at least three occasions and had allowed the father to have unsupervised contact with the children.
On 18 November 2001, the mother called the after-hours on-call social worker for DSS and told her that she could not handle caring for the children any more and that she wished to have the children placed in foster care. After subsequently stating the same thing to two other social workers, the mother again voluntarily placed her children with Angel Watch.
On 6 December 2001, DSS filed a petition alleging that the minor children were neglected and obtained non-secure custody of the children. The mother consented to the trial court's adjudication of her minor children as neglected based upon stipulated findings of fact. In its order filed 28 February 2002, following a hearing on 28 January 2002, the trial court determined that the children were neglected based on the fact that the children did not receive proper care and supervision and lived in an environment injurious to their welfare due to the domestic violence between the mother and father. *706 The court ordered the mother to (1) complete parenting classes, (2) complete a substance abuse program and follow all recommendations, (3) obtain a psychological assessment and follow all recommendations, and (4) obtain stable employment and housing.
The mother has acknowledged that on 24 January 2002, she tested positive for opiates. Subsequently, the mother failed to complete the ordered substance abuse assessment. Although she began parenting classes in January 2002 and attended all but three classes, she failed to complete the remaining three classes over the next 15 months. A psychological assessment concluded: "[The mother's] ability to parent her children effectively is often clouded by the emotional issues resulting from a history of abuse, inadequate coping skills, and chaotic interpersonal relationships. [The mother] . . . has the potential to provide a safe, stable home for her children, but there are many issues that she needs help with before she is able to parent them effectively." Although the court had ordered that the mother comply with any recommendations arising out of the assessment  which included recommendations of therapy, assertiveness training, anger management, participation in a support group for battered women, and completion of parenting classes  the mother failed to do so.
Throughout the period prior to the filing of the petition, the mother failed to obtain stable employment and housing. Following July 2002, the mother refused two drug screen requests. She was convicted of writing worthless checks in October 2002 and had another charge of worthless checks pending that was in violation of her probation for possession of drug paraphernalia.
The mother visited with the children on a somewhat regular basis until early October 2002. Following July 2002, the mother did not send letters, cards, or gifts to the children. She did not pay any child support even after a child support order of $104.00 was entered; she acknowledged at the time of the hearing that she was in arrears in the amount of approximately $500.00.
At a permanency planning hearing held on 6 November 2002, the plan for the children was changed from reunification to adoption, although DSS was required to allow visitation if the mother requested it. The mother did not contact her social worker again until December 2002. At that time, she did not, however, request visitation with the children. The mother did not attend a permanency planning hearing on 2 December 2002 and the court's order indicates that the mother had had no contact with either her attorney or DSS. The court, therefore, discontinued all visitation.
The mother made no further contact with DSS with the exception of leaving a voice mail on 3 January 2003, saying that she had moved to Tennessee and that she would be supplying DSS with her new address and phone number. Between that message and the filing of the petition for termination of parental rights, DSS heard nothing further from the mother.
On 17 April 2003, DSS filed separate petitions to terminate the mother's parental rights to each of her four children.[1] The petitions were served on 3 July 2003, the hearing was held on 2-3 September 2003, and the trial court filed a judgment terminating the mother's parental rights on 15 October 2003. In its order, the court concluded that the mother (1) neglected the children, (2) willfully left the children in foster care for more than 12 months without showing that reasonable progress had been made to correct the conditions that caused the removal of her children, and (3) willfully abandoned the children for at least six consecutive months immediately prior to the filing of the petition. After concluding that grounds for termination existed, the court further found that it was in the best interests of the children that their mother's parental rights be terminated.

I
The mother first contends on appeal that the trial court and DSS failed to comply *707 with the statutory time limitations with respect to the filing of the 28 February 2002 adjudication and disposition order; the scheduling of the first review hearing following the disposition; the filing of the 6 June 2002, 12 September 2002, and 15 January 2003 permanency planning review orders; and the filing of the petition to terminate parental rights. The mother contends that "[t]he Court's failure to comply with these time lines in [the mother's] case deprived the Court of jurisdiction to terminate her parental rights [and][t]herefore, the trial court should be reversed, and the petition to terminate her parental rights should be dismissed."
We first observe that any challenge to the 28 February 2002 adjudication is not properly before us. Under N.C. Gen.Stat. § 7B-1001 (2003), the mother had 10 days in which to appeal that order. In re Padgett, 156 N.C.App. 644, 647, 577 S.E.2d 337, 340 (2003) (adjudication and disposition order finding children to be neglected must be appealed within 10 days). With respect to the other timing issues, this Court has held that time limitations in the Juvenile Code are not jurisdictional in cases such as this one and do not require reversal of orders in the absence of a showing by the appellant of prejudice resulting from the time delay. See In re J.L.K., 165 N.C.App. 311, 316, 598 S.E.2d 387, 391 ("[W]e conclude that, on these facts, vacating the TPR order is not an appropriate remedy for the trial court's failure to enter the order within 30 days of the hearing. . . . Respondent has failed to demonstrate that he suffered any prejudice by the trial court's delay."), disc. review denied, 359 N.C. 68, 604 S.E.2d 314 (2004); In re E.N.S., 164 N.C.App. 146, 153, 595 S.E.2d 167, 172 ("[A]lthough the order was not filed within the specified time requirement, respondent cannot show how she was prejudiced by the late filing."), disc. review denied, 359 N.C. 189, 606 S.E.2d 903 (2004).
In this case, it appears that the review hearing was only three days late, N.C. Gen. Stat. § 7B-906(a) (2003) (requiring review hearing within 90 days of the dispositional hearing), although we also note that between the date of the adjudication and dispositional order and the review hearing, the court conducted a hearing on the placement of the children with a paternal grandmother. With respect to the permanency planning orders, they were late by approximately four days, 20 days, and 14 days respectively.[2]See N.C. Gen.Stat. § 7B-907(c) (2003) (requiring that permanency planning hearing orders be entered no later than 30 days following the hearing). Since the mother has made no attempt to demonstrate any prejudice from these relatively limited delays, we find no error. See, e.g., In re A.D.L., ___ N.C.App. ___, ___, 612 S.E.2d 639, ___, 2005 N.C.App. LEXIS 797, at *6-*8 (April 19, 2005) (holding no prejudicial error when an order was 16 days late); In re J.L.K., 165 N.C.App. at 315, 598 S.E.2d at 390 (holding no prejudicial error when an order was 89 days late). We continue, however, to caution courts and parties that by failing to comply with the legislature's mandates, they are disregarding the best interests of the children involved.
With respect to the timeliness of the petition for termination of parental rights, N.C. Gen.Stat. § 7B-907(e) (2003) provides that DSS:
shall file a petition to terminate parental rights within 60 calendar days from the date of the permanency planning hearing unless the court makes written findings why the petition cannot be filed within 60 days. If the court makes findings to the contrary, the court shall specify the time frame in which any needed petition to terminate parental rights shall be filed.
In this case, the hearing at which the permanent plan changed took place on 6 November 2002. Neither the order resulting from that hearing nor the order resulting from the December 2002 permanency planning hearing contained any extension of DSS' deadline or any findings as to why the petition could not be filed within 60 days. The petitions *708 should have been filed by 6 January 2003. They were not, however, filed until 17 April 2003, more than three months late.
In In re B.M., 168 N.C.App. 350, 354, 607 S.E.2d 698, 701 (2005), this Court held that "the time limitation specified in N.C. Gen. Stat. § 7B-907(e) is directory rather than mandatory and thus, not jurisdictional." The Court then concluded that the respondents had failed to show that they were prejudiced by a petition that was 11 months late. The Court observed:
Respondents' right to appeal was not affected by the untimely filing. An order following a review hearing or permanency planning hearing that changes the permanency plan from reunification to termination of parental rights is a dispositional order that fits within the statutory language of N.C. Gen.Stat. § 7B-1001. Respondents could have appealed from either the review hearing ceasing DSS's efforts to reunify the family or from the permanency planning order which changed the permanency plan for the juveniles to termination of parental rights, as they both constituted dispositional orders which were immediately appealable under the provisions of N.C. Gen.Stat. § 7B-1001.
Id. at 354-55, 607 S.E.2d at 701 (internal citations omitted). The mother in this case could likewise have appealed from the permanency planning order entered 3 December 2002. The only prejudice that the mother identifies is that "DSS ceased reunification but waited many months to initiate termination proceedings." She does not explain in what manner the delay prejudiced her in light of the fact she chose not to take advantage of the opportunity to have visitation with her children during this period and failed to have any contact with DSS.
Since the mother has not pointed to any circumstances in this case that could distinguish her situation from In re B.M., that case, involving an 11-month delay, controls with respect to this case, involving a three-month delay. We, therefore, hold that the mother is not entitled to reversal of the trial court's termination of parental rights order based on the trial court's and DSS' failure to comply with the statutory deadlines.

II
The mother next assigns error to the trial court's findings of fact 31, 47, 48, 49, 50, and 51 on the grounds that the court "erred by failing to make findings of fact but simply recit[ed] the testimony of witnesses at the hearing and making findings that are contradictory." We disagree.
N.C. Gen.Stat. § 1A-1, Rule 52(a)(1) provides in pertinent part: "In all actions tried upon the facts without a jury . . . the court shall find the facts specially and state separately its conclusions of law. . . ." N.C. Gen. Stat. § 1A-1, Rule 52(a)(1) (2003). The Supreme Court, in interpreting Rule 52(a)(1), noted that trial courts must make specific findings of the ultimate facts, but need not make findings regarding evidentiary and subsidiary facts:
[A] proper finding of facts requires a specific statement of the facts on which the rights of the parties are to be determined, and those findings must be sufficiently specific to enable an appellate court to review the decision and test the correctness of the judgment.
. . . .
[W]hile Rule 52(a) does not require a recitation of the evidentiary and subsidiary facts required to prove the ultimate facts, it does require specific findings of the ultimate facts established by the evidence, admissions and stipulations which are determinative of the questions involved in the action and essential to support the conclusions of law reached.
Quick v. Quick, 305 N.C. 446, 451-52, 290 S.E.2d 653, 657-58 (1982) (internal citations omitted).
While the trial court did include findings of fact that summarized the testimony, the court also made the necessary ultimate findings of fact. There is nothing impermissible about describing testimony, so long as the court ultimately makes its own findings, resolving any material disputes. The testimony summaries were not the ultimate findings of fact; those findings were found elsewhere in the order.
*709 The mother argues that there were inconsistencies in the testimony summaries, pointing only to a dispute regarding the date when the mother stopped consistently visiting her children. The witnesses variously stated that the date was July, September, or October 2002. The trial court, however, made a finding resolving this dispute. In finding of fact 31, the court found "[t]hat Respondent Mother visited with the minor children on a somewhat regular basis until early October 2002, when she began to fail to appear for visits. . . ." We, therefore, overrule this assignment of error.

III
The mother next argues that the trial court relied upon the incorrect standard when it found that grounds existed to terminate her parental rights under N.C. Gen. Stat. § 7B-1111(a)(2) (2003). In finding of fact 25, the court stated:
That pursuant to N.C.G.S. § 7B-1111(2) [sic] the Respondent Mother has willfully left the minor children in foster care or placement outside the home for more than twelve (12) months without showing to the satisfaction of the Court that reasonable progress under the circumstances has been made within twelve (12) months in correcting those conditions which led to the removal of the minor children. . . .
(Emphasis added.) The statute has, however, been amended to provide: "The parent has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile." N.C. Gen.Stat. § 7B-1111(a)(2) (emphasis added). The focus is no longer solely on the progress made in the 12 months prior to the petition.
Because this problem appears to occur with frequency, we urge the courts and counsel to take care to ensure that they are referring to the proper version of the statute. Nevertheless, because, in this case, the mother has not assigned error to the trial court's other grounds for termination  neglect under N.C. Gen.Stat. § 7B-1111(a)(1) and willful abandonment under N.C. Gen.Stat. § 7B-1111(a)(7)  the trial court's error is immaterial. "The finding of any one of the grounds is sufficient to order termination." Owenby v. Young, 357 N.C. 142, 145, 579 S.E.2d 264, 267 (2003). Either of the two unchallenged grounds for termination is sufficient to support the trial court's order.

IV
In her last assignment of error, the mother argues that even if grounds exist to terminate her parental rights, the trial court abused its discretion in deciding that it was in the best interests of the children to terminate those rights. After reviewing the record, we cannot perceive any basis for concluding that the trial court abused its discretion.
If at least one ground for termination is proven by clear, cogent and convincing evidence, then the trial court proceeds to the dispositional phase and considers whether termination is in the best interests of the child. N.C. Gen.Stat. § 7B-1110(a) (2003); In re Blackburn, 142 N.C.App. 607, 610, 543 S.E.2d 906, 908 (2001). "It is within the trial court's discretion to terminate parental rights upon a finding that it would be in the best interests of the child." In re Shermer, 156 N.C.App. 281, 285, 576 S.E.2d 403, 406-07 (2003). On appeal, we review the trial court's decision to terminate parental rights for an abuse of discretion. In re Anderson, 151 N.C.App. 94, 98, 564 S.E.2d 599, 602 (2002).
In support of her argument, the mother emphasizes that she has a strong "bond" with her children and that she had made progress in doing what the trial court ordered, such as completing most of her parenting classes and regularly visiting her children. The trial court was, however, entitled to give greater weight to other facts that it found, including: (1) the mother's repeated statements  when she had custody  that she could not handle the responsibility of parenting her children and her choice on two occasions to request that her children be placed in foster care; (2) the mother's failure to obtain stable housing and employment at any *710 time; (3) her failure to successfully complete her parenting classes; (4) her failure to comply with any recommendations arising out of her psychological assessment; (5) her failure to complete a substance abuse assessment; and (6) her failure after early October 2002 to visit her children, to send letters or gifts to her children, to pay support, or to have contact with DSS other than two phone calls. It was up to the trial court to decide the degree of progress made by the mother and whether these facts outweighed the mother's bond with her children. Significantly, the court found that at the hearing  2 1/2 years after DSS first became involved  the mother "stated that it is best for the children to stay where they are until she shows `what she can do.'"
Based on the trial court's findings of fact and the record, we hold that the trial court did not abuse its discretion in terminating the mother's parental rights. See In re Humphrey, 156 N.C.App. 533, 577 S.E.2d 421 (2003) (upholding termination order where evidence showed the mother failed to contact her child for a significant period and had withheld her love, care, and affection from the child); In re Leftwich, 135 N.C.App. 67, 518 S.E.2d 799 (1999) (affirming order terminating parental rights where the parent failed to enroll in a drug treatment facility and to make other improvements in her lifestyle that might help her to better care for her children).
The mother's remaining assignments of error were not argued in her brief. They are, therefore, deemed abandoned. N.C.R.App. P. 28(b)(6).
Affirmed.
Judge TIMMONS-GOODSON concurs.
Judge TYSON dissents in separate opinion.
TYSON, Judge dissenting.
I respectfully dissent.
What began as an impassioned plea for help to DSS by an impoverished single mother with four small children has ended, despite her substantial efforts, with termination of her parental rights to all children. The trial court found DSS had shown the mother: (1) neglected her four minor children; (2) willfully left her children in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances had been made within 12 months in correcting those conditions which led to the removal of the children; and (3) willfully abandoned her children for at least six consecutive months immediately preceding the filing of the petition and continued to abandon the minor children up to the time of the hearing for termination of parental rights. Based on these findings and conclusions, the court terminated L.M.'s parental rights to all four of her children.

I. Background
L.M. is the mother of four minor children; a son, C.L.C. (Born 22 March 1996), a son, K.T.R. (Born 5 December 1997), a daughter, A.M.R. (Born 24 May 1999), and a daughter, E.A.R. (Born 27 May 2000). The father of C.L.C. committed suicide five months after C.L.C. was born. The father of K.T.R., A.M.R., and E.A.R. displayed a continuous pattern of domestic violence against L.M. L.M. had moved away from and was not living with the father of her three younger children at the time DSS took custody of the children. At the time of the hearing for termination of L.M.'s parental rights, L.M. was twenty-four years old and her children ranged from three to seven years old.

II. Statutory Time Limits
L.M. argues DSS and the trial court's failure to obey the statutorily mandated time lines regarding permanency planning, initiation of the petitions to terminate her parental rights, and the entry of orders deprived the court of jurisdiction to rule on the petition to terminate her parental rights. L.M. also argues she and her children were prejudiced as a result of DSS' and the trial court's failure to obey the statutory time lines. I agree.

A. Time Limits Regarding Custody
"In any case where custody is removed from a parent . . . the court shall conduct a review hearing within 90 days from the date of the dispositional hearing and shall conduct *711 a review hearing within six months thereafter." N.C. Gen.Stat. § 7B-906(a) (2003) (emphasis supplied). Orders from review hearings "must be reduced to writing, signed, and entered within 30 days of the completion of the hearing." N.C. Gen.Stat. § 7B-906(d) (2003) (emphasis supplied). "In any case where custody is removed from a parent, guardian, custodian, or caretaker, the judge shall conduct a review hearing designated as a permanency planning hearing within 12 months after the date of the initial order removing custody...." N.C. Gen.Stat. § 7B-907(a) (2003) (emphasis supplied). Orders from permanency planning review hearings "shall be reduced to writing, signed, and entered no later than 30 days following the completion of the hearing." N.C. Gen.Stat. § 7B-907(c) (2003) (emphasis supplied).

B. Time Limits Regarding Termination of Parental Rights
The statutes also prescribe time limits when the child's permanent plan requires terminating a parent's parental rights.
If a proceeding to terminate the parental rights of the juvenile's parents is necessary in order to perfect the permanent plan for the juvenile, the director of the department of social services shall file a petition to terminate parental rights within 60 calendar days from the date of the permanency planning hearing unless the court makes written findings why the petition cannot be filed within 60 days.
N.C. Gen.Stat. § 7B-907(e) (2003) (emphasis supplied). After a petition to terminate parental rights is filed, the Court must hold the adjudicatory hearing "no later than 90 days from the filing of the petition or motion unless the judge pursuant to subsection (d) of [§ 7B-1109] orders that it be held at a later time." N.C. Gen.Stat. § 7B-1109(a) (2003). "The adjudicatory order shall be reduced to writing, signed, and entered no later than 30 days following the completion of the termination of parental rights hearing." N.C. Gen.Stat. § 7B-1109(e) (2003) (emphasis supplied). Further,
Should the court determine that any one or more of the conditions authorizing a termination of the parental rights of a parent exist, the court shall issue an order terminating the parental rights of such parent with respect to the juvenile unless the court shall further determine that the best interests of the juvenile require that the parental rights of the parent not be terminated. Any order shall be reduced to writing, signed, and entered no later than 30 days following the completion of the termination of parental rights hearing.
N.C. Gen.Stat. § 7B-1110(a) (2003) (emphasis supplied).

C. Prejudice Resulting from Failure to Follow Statutory Time Limits
L.M. asserts she and her children were prejudiced by DSS' and the trial court's failure to comply with the statutory time limits required in custody and termination of parental rights proceedings.
This Court has previously stated that absent a showing of prejudice, the trial court's failure to reduce to writing, sign, and enter a termination order beyond the thirty day time window may be harmless error. See In re J.L.K., 165 N.C.App. 311, 315, 598 S.E.2d 387, 390 (2004) (order entered eighty-nine days after the hearing), disc. rev. denied, 359 N.C. 68, 604 S.E.2d 314 (2004). This holding has also been applied to adjudication and disposition orders involving custody proceedings under N.C. Gen.Stat. § 7B-807(b) and § 7B-905(a). See In re E.N. S., 164 N.C.App. 146, 153, 595 S.E.2d 167, 172 (2004) (no prejudice shown on adjudication and disposition orders entered over forty days after the hearing), disc. rev. denied, 359 N.C. 189, 606 S.E.2d 903 (2004). The reasoning in In re E.N.S. was applied to petitions seeking termination of parental rights under N.C. Gen.Stat. § 7B-907(e). See In the Matter of B. M., M. M., An. M., and Al. M., 168 N.C.App. 350, 355, 607 S.E.2d 698, 702 (2005) (although no prejudice was shown, we stated, "[w]e strongly caution against this practice as it defeats the purpose of the time requirements specified in the statute, which is to provide parties with a speedy resolution of cases where juvenile custody is at issue.").
In re L.E. B., ___ N.C.App. ___, ___, 610 S.E.2d 424, 426 (2005).
*712 Here, the statutorily mandated time limits were violated virtually every time. L.M. consented to an adjudication of neglect on 28 January 2002 and the adjudication and disposition order was filed on 28 February 2002. Although the adjudication hearing was held within the required 90 days, the order was not entered until the expiration of the thirty days on 28 February 2002. Further, the trial court was required to hold a review hearing within 90 days of 28 January 2002. However, no review hearing was held until 2 May 2002, 94 days later. The trial court also failed to reduce to writing, sign, and enter orders from permanency planning review hearings within the statutorily mandated 30 days. Orders from the 2 May 2002, 24 July 2002, and 2 December 2002 permanency planning review hearings were entered on 5 June 2002 (34 days), 12 September 2002 (50 days), and 15 January 2003 (44 days) after the permanency planning review hearings.
On 6 November 2002, the permanent plan for the minor children was changed from reunification to adoption. The trial court upheld this plan at the 2 December 2002 permanency planning review hearing. Once the permanent plan was changed to adoption, N.C. Gen.Stat. § 7B-907(e) requires the director of the DSS to file a petition to terminate parental rights "within 60 calendar days from the date of the permanency planning hearing." However, DSS did not file a petition to terminate L.M.'s parental rights until 17 April 2003, 162 days after the 6 November 2002 permanency planning review hearing and 136 days after the 2 December 2002 permanency planning review hearing. The hearing on these petitions to terminate L.M.'s parental rights was held on 2 and 3 September 2003 (138 days later) and the order was entered on 15 October 2003 (42 days later) (180 total days after the petition was filed). See N.C. Gen.Stat. § 7B-907(e) (after a petition to terminate parental rights is filed, the Court must hold the adjudicatory hearing "no later than 90 days from the filing of the petition or motion ...") and N.C. Gen.Stat. § 7B-1109(e) ("the adjudicatory order shall be reduced to writing, signed, and entered no later than 30 days following the completion of the termination of parental rights hearing.") (emphasis supplied).
L.M. has sufficiently shown prejudice by the continual failure by petitioner to comply with the statutorily mandated time lines. See In re C.J. B., ___ N.C.App. ___, ___, 614 S.E.2d 368, ___ (2005) (holding that prejudice shown where there was a five month delay in entry of the written order terminating respondent's parental rights).
L.M., a young, impoverished, single mother of four children, contacted DSS and, based upon her concern for their welfare, twice voluntarily placed her children in the custody of DSS, while she sought employment, parenting skills, and a safe and secure home. Throughout the entire process, L.M. was required to make progress toward the recommendations of DSS and the trial court in order to address and improve her situation and regain custody of her children. However, DSS and the trial court repeatedly failed to follow the statutorily mandated time limits regarding permanency planning hearings, entry of orders, and filing of the petition to terminate respondent's parental rights. As a result, L.M. was unable to receive the consistent statutorily mandated evaluations and be given notice of the recommendations and requirements to regain custody of her children.
Repeated failures to comply with the time limits "defeat[ed] the purpose of the time requirements specified in the statute, which is to provide [all] parties with a speedy resolution of cases where juvenile custody is at issue" and prejudiced all parties: respondent, her children, and those caring for her children. In re B. M., M. M., An. M., and Al. M., 168 N.C.App. 350, 355, 607 S.E.2d 698, 702 (2005).
In In re R.T. W., our Supreme Court recently noted the "potential tension between parental rights and child welfare[,]" stating that children should be removed from their homes only "`when necessary' and consistent with fairness, equity, and `the constitutional rights of juveniles and parents.'" 359 N.C. 539, 544, 614 S.E.2d 489, 493 (2005) (quoting N.C. Gen.Stat. § 7B-100 (2003)). The Court stated "[o]ur legislature values `family autonomy' and prefers the familial unit as usually being the best means of satisfying a child's *713 need for `safety, continuity, and permanence.'" Id.
The Court further stated the "`best interests of the juvenile' [is] the courts' `paramount consideration' ... [and] when reunification is against the child's best interest [the statute] favors placing the child `in a safe, permanent home within a reasonable amount of time.'" Id. The children were initially placed with the maternal grandmother of the three youngest children with orders that respondent have no contact with her children and that no derogatory comments about respondent be made to the children. Here, repeated failures to comply with the statutory mandates violated fairness and increased tensions within the family, caused prejudice to both the juveniles and L.M., and did not meet the need for placing the juveniles "in a safe, permanent home within a reasonable amount of time" as required by our legislature and case law. Id.
Prejudice is also shown because the "appellate process was put on hold[ ][and] any sense of closure for the children, respondent, or the children's current care givers was out of reach...." In re C.J. B., ___ N.C.App. at ___, 614 S.E.2d at 370. Because L.M., her children, and her children's care-givers suffered prejudice resulting from repeated and cumulative failures to comply with the statutorily mandated time limits throughout the child custody and termination of parental rights proceedings, I vote to reverse the order of the trial court.

III. Clear, Cogent, and Convincing Evidence
Respondent argues the trial court order is not supported by clear, cogent, and convincing evidence. Termination of parental rights requires clear, cogent, and convincing evidence. "An order terminating parental rights will be upheld if there is clear, cogent, and convincing evidence to support the findings of fact and those findings of fact support the trial court's conclusions of law." In re Clark, 159 N.C.App. 75, 83, 582 S.E.2d 657, 662 (2003) (citing In re Oghenekevebe, 123 N.C.App. 434, 439, 473 S.E.2d 393, 398 (1996)).
This "standard is greater than the preponderance of the evidence standard required in most civil cases, but not as stringent as the requirement of proof beyond a reasonable doubt required in criminal cases." In re Montgomery, 311 N.C. 101, 109-10, 316 S.E.2d 246, 252 (1984) (citing Santosky v. Kramer, 455 U.S. 745, 745, 102 S.Ct. 1388, 71 L.Ed.2d 599, 599 (1982)). The burden of proof rests on DSS to provide clear, cogent, and convincing evidence to justify termination of respondent's parental rights. In re Nolen, 117 N.C.App. 693, 698, 453 S.E.2d 220, 223 (1995) (citations omitted).

A. Reasonable Efforts
Respondent argues the trial court erred by applying the incorrect standard in finding that she did not make reasonable progress under the circumstances "within 12 months in correcting [the] conditions which led to the removal of the children." The trial court articulated the former standard, that reasonable progress be made within 12 months, not the current standard, that "reasonable progress under the circumstance has been made." N.C. Gen.Stat. § 7B-1111(a)(2) (2003). As the majority opinion notes, "the focus is no longer solely on the progress made in the 12 months prior to the petition."
Applying the correct standard of reasonable efforts, not limited to the twelve months preceding the petition, no clear, cogent, and convincing evidence supports the finding that L.M. failed to make reasonable progress. L.M. was ordered to: (1) attend and comply with the Helpmate program; (2) utilize counseling through the Blue Ridge Center; (3) obtain a substance abuse assessment and follow any recommendations; (4) obtain a psychological evaluation and follow recommendations; (5) attend and complete parenting classes; and (6) maintain stable employment and housing.
According to her testimony, L.M.: (1) attended two to three DBT (Dialectical Behavior Therapy) training classes (which were recommended following her completed psychological assessment) before asking for on one-on-one counseling; respondent stated the class did not relate to her issues because it mainly dealt with alcoholics; (2) completed all but two of her parenting classes; (3) completed a psychological evaluation; (4) obtained *714 a home in Tennessee; (5) obtained a steady job; (6) obtained a vehicle; and (7) completed a substance abuse assessment on 27 June 2003.
Further, L.M. called and visited her children, frequently inquired about her children, and provided them with birthday and Christmas presents, toys, clothes and necessities. A review of the record and transcripts shows very little evidence was presented regarding any problems with L.M.'s two daughters.
Reviewed in the light most favorable to respondent, clear, cogent, and convincing evidence does not support a finding or conclusion L.M. did not make reasonable progress to correct the conditions which led to the removal of her children. See In re Nesbitt, 147 N.C.App. 349, 555 S.E.2d 659 (2001) (The respondent's progress in safety and parenting skills, housing, and employment were evaluated over a twenty-seven month period. Reasonable efforts were found where the respondent attended therapy and coping skills group; selected appropriate television shows and provided toys and physical safety for her child; attempted to recognize and improve reactions to her child; secured and lived in a new home for almost one year after being evicted, living in a hotel, and living in other temporary arrangements; maintained child support payments; and continued efforts to secure employment although the respondent held approximately seven jobs since the child had been removed.)
L.M.'s reasonable progress was demonstrated. No substantial evidence was shown to terminate L.M.'s parental rights on this ground, particularly as it applies to her two daughters, A.M.R. and E.A.R.

B. Willful Abandonment
No evidence supports a finding that L.M.'s children were willfully abandoned for at least six consecutive months immediately preceding the filing of the petition. The petitions for termination of parental rights were filed 17 April 2003. In the permanency planning review hearing held 6 November 2002, the court found L.M. was incarcerated for the past month due to writing worthless checks. Incarceration, standing alone, is insufficient to support a termination of parental rights. See In re Clark, 151 N.C.App. 286, 289-90, 565 S.E.2d 245, 247-48, disc. rev. denied, 356 N.C. 302, 570 S.E.2d 501 (2002) (termination of the respondent's parental rights reversed where the respondent was incarcerated and evidence was insufficient to find he was unable to care for his child). The trial court issued an order on 2 December 2002 (filed 15 January 2003) stating "[t]hat all visits for [L.M.] with the minor children will cease."
Naomi Kent, a DSS foster care social worker, testified L.M. contacted DSS in December 2002 and again on 3 January 2003 and 4 March 2003 to request visits with the children. L.M. also requested a home study by DSS of her new home in Tennessee on 3 June 2003. The record shows that during this time period when L.M. maintained contact with DSS and attempted to visit her children and requested DSS perform a home study of her new home, the 2 December 2003 order (which was filed 15 January 2003) barring her from any contact with her children was in effect. The petition to terminate respondent's parental rights was not filed within sixty days of this order as statutorily required, but four and one half months later. N.C. Gen.Stat. § 7B-907(e). The hearing on the petitions to terminate was not held until 2 and 3 September 2003 (138 days later) and the order terminating parental rights was not entered until 15 October 2003 (42 days later) (180 total days after the petition was filed). L.M. was incarcerated for worthless checks during some of this time period, but maintained regular contact with DSS, appeared at all but one of her hearings, repeatedly requested visits with and information about her children, and requested a DSS home study of her new home in Tennessee. DSS admitted it did not allow or follow up on these requests. L.M. did not willfully abandon her children for six consecutive months immediately preceding the filing of the petition. See Bost v. Van Nortwick, 117 N.C.App. 1, 14, 449 S.E.2d 911, 919 (1994) (quoting In re Roberson, 97 N.C.App. 277, 280, 387 S.E.2d 668, 670 (1990)) ("The word `willful' as applied in termination proceedings... has been defined as `disobedience which imports knowledge and a stubborn resistance....'"), appeal dismissed, 340 N.C. 109, 458 S.E.2d 183 (1995).

*715 III. Conclusion

L.M. was clearly prejudiced by petitioner's repeated and cumulative failures to comply with the statutorily mandated time lines.
No clear, cogent, and convincing evidence supports a finding that L.M. failed to make reasonable progress in correcting the conditions which resulted in the removal of her children or that L.M. willfully abandoned her children for six consecutive months immediately preceding the filing of the petition although she was under an order not to see her children.
I vote to reverse the trial court's order for either or all of these reasons. I respectfully dissent.
NOTES
[1] These petitions also sought to terminate the father's parental rights for K.T.R., A.M.R., and E.A.R. C.L.C.'s father was deceased.
[2] We are only able to approximate the filing dates since the mother, contrary to the Rules of Appellate Procedure, has not either ensured that the record on appeal contains legible date stamps indicating the filing date or typed the date of filing on the orders for which review is sought. N.C.R.App. P. 9(b)(3).