IN THE MATTER OF: C.M., V.K., Q.K.

No. COA07-16

(Filed 5 June 2007)

**1. Termination of Parental Rights— failure to hold hearing within ninety days—delay inured to respondent's benefit**

The trial court did not abuse its discretion by concluding that termination of respondent's parental rights was in the best interests of the children even though the trial court failed to hold the termination hearing within ninety days as required by N.C.G.S. § 7B-1109(a), because: (1) time limitations in the Juvenile Code are not jurisdiction in cases such as this one and do not require reversal of orders in the absence of a showing by

**IN RE C.M., V.K., Q.K.**

[183 N.C. App. 398 (2007)]

the appellant of prejudice resulting from the time delay; (2) the older child's detailed plan demonstrated the delay in conducting the termination hearing was due to the extraordinary efforts by the court to allow respondent an opportunity to demonstrate her ability to parent the three younger children by monitoring respondent's performance in parenting the older child; (3) the delay inured to respondent's benefit, affording respondent every possible opportunity to be reunited with her children; (4) respondent does not provide a specific argument as to why her inability to cross-examine Dr. Duthie prejudiced her, and there was plenary other evidence of record supporting the trial court's findings; (5) respondent failed to explain why putting her case in a "holding pattern" prejudiced her, and the evidence tended to show the contrary; and (6) respondent did not, at any point, object to the delay.

**2. Termination of Parental Rights— findings of fact—conclusions of law—sufficiency of evidence**

The trial court did not err or abuse its discretion by terminating respondent's parental rights even though respondent contends the order was not properly supported by the findings of fact and conclusions of law, because: (1) respondent's argument relies upon the 2005 version of N.C.G.S. § 7B-1110(a), which is not applicable in this case; (2) ample evidence in the record supported the three statutory grounds for termination found by the trial court; and (3) the trial court made multiple findings of fact regarding respondent's failure over a period of more than a year to demonstrate her ability to properly parent the children by implementing what she had been taught in the various programs which she had attended.

**3. Appeal and Error— preservation of issues—failure to argue**

The remaining assignments of error that respondent failed to argue in her brief are deemed abandoned under N.C. R. App. P. 28(b)(6).

Appeal by respondent from order entered 19 October 2006 by Judge Lisa C. Bell in Mecklenburg County District Court. Heard in the Court of Appeals 23 April 2007.

*Tyrone C. Wade for petitioner-appellee Mecklenburg County Department of Social Services.*

IN RE C.M., V.K., Q.K.

[183 N.C. App. 398 (2007)]

*Mary McCullers Reece for respondent-appellant-mother.*

*Poyner & Spruill LLP, by Michelle C. Hunt, for Guardian ad Litem-appellee.*

STEELMAN, Judge.

There is no prejudice resulting from the trial court's noncompliance with N.C. Gen. Stat. § 7B-1109(a) (2005), when the delay inures to respondent's benefit, affording respondent every possible opportunity to be reunited with her children.

On 11 May 2004, the Mecklenburg County Department of Social Services (DSS) filed a juvenile petition which alleged that C.M., V.K., Q.K., and D.B. were neglected and dependent. Pursuant to a nonsecure custody order entered that same day, D.B. was placed with his grandmother and the three remaining children were placed in foster care. In an adjudicatory and dispositional order entered on 22 June 2004, the children were adjudicated to be neglected and dependent as to their mother, Shanna M. (respondent).

The trial court adopted a mediated case plan entered into on 2 June 2004 and a written case plan dated 6 June 2004. Under the mediated case plan, respondent

> would obtain a F.I.R.S.T. assessment, attend parenting classes, obtain domestic violence counseling, have sufficient income to meet the children's needs, have safe and appropriate housing, maintain contact with the social worker, receive a bus pass, attend visitation, cooperate with a parenting capacities evaluation, and attend and participate in appointments to meet the children's medical, dental, developmental and educational needs.

Following a review hearing on 15 September 2004, the trial court ordered that respondent "must be able to demonstrate her ability to parent properly by implementing what she has been taught in the various programs." At the time of a review hearing on 18 March 2005, respondent "had not made sufficient progress to have the children returned to her custody." The trial court's findings of fact from a review hearing on 26 April 2005 stated that "a psychological evaluation . . . indicated that the [respondent] will not be able to effectively parent her children without long term support from a helping agency" and that she "cannot effectively meet the safety needs of [C.M.] and can only marginally meet the safety needs of

the other children and further that her parenting deficit will be extremely resistant to treatment."

On 23 June 2005, DSS filed petitions to terminate the parental rights of respondent and of the respective fathers as to C.M., V.K., and Q.K. The petitions contained allegations of neglect (7B-1111(a)(1)), leaving the children in foster care for more than twelve months (7B-1111(a)(2)) without reasonable progress, and failure to pay a reasonable portion of the cost of care (7B-1111(a)(3)). The plan as to D.B., the oldest child, remained reunification.

At the 4 October 2005 review hearing, the trial court found that respondent "had made some progress on some case plan goals, [but] she had not yet demonstrated that she was able to meet the children's minimal needs." At the 30 January 2006 review hearing, the trial "[c]ourt found that [respondent] was still not able to meet the significant needs of her children or provide for their day to day care." The trial court found after the 8 May 2006 review hearing "that [respondent] was still not able to parent her children without ongoing intervention."

In its termination order entered after the hearing on 25 July 2006 and 28 July 2006, the trial court found that "the children have not resided with [respondent] in over two and one-half years and she has not parented them during the time that they have been out of the home" and that petitioner "has proven by clear, cogent and convincing evidence that grounds exist to terminate the parental rights of [respondent] to [Q.K.], [V.K.] and [C.M.]." Respondent "has neglected all three juveniles by failing to show that she has the ability to meet their needs if they were to be returned to her home. She has availed herself of numerous services offered by or through the [petitioner]."

After concluding that respondent had neglected the three children (N.C. Gen. Stat. § 7B-1111(a)(1)), left them in foster care for more than twelve months (N.C. Gen. Stat. § 7B-1111(a)(2)) without reasonable progress, and had failed to pay a reasonable portion of the cost of their care (N.C. Gen. Stat. § 7B-1111(a)(3)), the trial court further concluded "[t]hat the best interests of the above-named juveniles would be served by the termination of the parental rights of both respondent parents with respect to these juveniles." The trial court then ordered that respondent's parental rights be terminated as to C.M., Q.K. and V.K.

**IN RE C.M., V.K., Q.K.**

[183 N.C. App. 398 (2007)]

**[1]** In her first argument, respondent contends the trial court erred by failing to hold the termination hearing within ninety days after the petition was filed and by failing to timely enter the termination order. She specifically argues she was unable to question the psychologist who had assessed her parenting capacities in 2005 because he had moved out of state by the time of the termination hearing. Respondent complains her case plan was put on a "holding pattern" pending the hearing. She also claims she was prejudiced because she was entitled to a speedy resolution of the termination petition and to a speedy appeal of the order terminating her parental rights. We disagree.

DSS filed the petitions to terminate respondent's parental rights on 23 June 2005. However, the trial court conducted the hearing on 25 and 28 July 2006, more than one year later, and entered an order terminating respondent's parental rights on 19 October 2006. The trial court clearly did not adhere to the time limit found in N.C. Gen. Stat. § 7B-1109(a) (2005), which requires that an adjudicatory hearing be held "no later than 90 days from the filing of the petition" for termination. However, "this Court has held that time limitations in the Juvenile Code are not jurisdictional in cases such as this one and do not require reversal of orders in the absence of a showing by the appellant of prejudice resulting from the time delay." *In re C.L.C.*, 171 N.C. App. 438, 443, 615 S.E.2d 704, 707 (2005), *aff'd per curiam and disc. review improvidently allowed*, 360 N.C. 475, 628 S.E.2d 760 (2006).

Respondent's contentions of prejudice due to the delay are not persuasive given the trial court's requirement that she "must be able to demonstrate her ability to parent properly by implementing what she had been taught in the various programs." The trial court found after review hearings in October and December of 2005, and in January and March of 2006, that respondent had made "some progress on some case plan goals" but had not demonstrated sufficient ability to parent the children without ongoing intervention, and that she was unable to meet the children's minimal needs. The court noted that "[respondent] has housing[,] [and] [t]he visits that have been observed by the parenting educator from the Family Center . . . have gone well."

The trial court found in the termination order that it advised respondent "that it needed to see if [respondent] was able to meet [D.B.'s] needs alone before considering returning the other children to her care." On 14 July 2005, the trial court entered a permanency

IN RE C.M., V.K., Q.K.

[183 N.C. App. 398 (2007)]

planning order, stating that "some progress has been made by [respondent.]" The trial court further stated that "[i]t is possible for [D.B.] to be returned home . . . within [six] months[;] therefore reunification with [respondent] . . . remains the goal if [respondent] continues to make progress[.]" In an effort to reunify D.B. with respondent, "[a] very detailed plan was developed [on 29 March 2006] to give [respondent] the opportunity to demonstrate that she could parent [D.B.]" After the 8 May 2006 review hearing, however, the trial court found "that [respondent] was still not able to parent her children without ongoing intervention." The trial court stated:

> [Respondent] was to take [D.B.] to all his medical appointments. She failed to do this. She was to obtain [D.B.'s] Medicaid card. She failed to do this as well. She failed to determine when [D.B.'s] last medical and dental appointments were. She failed to return him to his grandmother's home on a regular and timely basis.

On 8 May 2006, the court adopted the plan of granting guardianship of [D.B.] to his grandmother.

D.B.'s detailed plan demonstrates that the delay in conducting the termination hearing was due to the extraordinary efforts by the court to allow respondent an opportunity to demonstrate her ability to parent the three younger children by monitoring respondent's performance in parenting the older child, D.B. Rather than prejudicing respondent, these efforts inured to her benefit, affording respondent every possible opportunity to be reunited with her children.

Respondent specifically argues that she was prejudiced by the delay. because the psychologist, Dr. Duthie, who assessed her parenting capacities in 2005, was absent from the hearing. He had moved out of state. Respondent contends that her inability to question Dr. Duthie about her compliance with his recommendations prejudiced her. We find this argument unconvincing.

Respondent points out that although the court did not allow Dr. Duthie's evaluation to be admitted as evidence at the termination hearing, the court made findings of fact in its termination order based on Dr. Duthie's evaluation:

> 9. Per Court Order, [respondent] submitted to a Parenting Capacity Evaluation. The evaluation indicated that [respondent] could benefit from intensive psychotherapy and participation in the Nurturing Parenting group.

**IN RE C.M., V.K., Q.K.**

[183 N.C. App. 398 (2007)]

10. . . . . [The court ordered that respondent] follow through with the recommendations from the parenting capacities evaluation. . . .

14. The Permanency Planning hearing was held on April 26, 2005. The Court's Findings of Fact included: ". . . a psychological evaluation completed by Dr. Bruce Duthie indicated that the mother will not be able to effectively parent her children without long term support from a helping agency. Further, the evaluation suggests that the mother cannot effectively meet the safety needs of C.M. and can only marginally meet the safety needs of the other children and that her parenting deficit will be extremely resistant to treatment. . . .

22: [Respondent] completed the parenting capacities evaluation. Subsequently, she began psychotherapy with [C.L.]. She continues to attend sessions with [C.L.] every other week.

These findings, however, specifically address neither Dr. Duthie's recommendations, nor respondent's compliance with Dr. Duthie's recommendations, which respondent argues is the basis for prejudice to her. Further, the findings were not vital to the court's decision to terminate respondent's parental rights. Dr. Duthie evaluated respondent in the summer of 2004, two years prior to the termination hearing. Plenary other evidence subsequent to Dr. Duthie's evaluation substantiated the trial court's findings of fact, which supported the termination order entered 19 October 2006. Many of the findings pertained to the period of time between the filing of the petitions to terminate respondent's parental rights and the hearing on termination, during which time respondent failed to care for her oldest child, D.B. Moreover, the trial court noted that finding of fact fourteen listed above was also made in the 26 April 2005 prior permanency planning order, which the court received into evidence at the termination hearing. *See In re J.W., K.W.*, 173 N.C. App. 450, 455-56, 619 S.E.2d 534, 539-40 (2005), *aff'd by* 360 N.C. 361, 625 S.E.2d 780 (2006) (stating that a court "may take judicial notice of earlier proceedings in the same cause[,] . . . [and] prior [orders] are admissible, although not determinative in a parental rights proceeding").

Because the trial court excluded the entire evaluation of Dr. Duthie at the termination hearing, this Court is unable to review the recommendations of Dr. Duthie. The evaluation was not made available in the record on appeal. At the hearing, counsel for respondent,

IN RE C.M., V.K., Q.K.

[183 N.C. App. 398 (2007)]

Mr. Lucey, objected to the admission of the evaluation into evidence, and the trial court honored respondent's request:

> The court: I think Mr. Lucey's point [is] that even [if the DSS worker] testif[ies] that [Dr. Duthie made] recommendations and that those recommendations weren't followed—without being able to cross-examine [Dr. Duthie] on what the recommendations were and how they weren't followed, . . . that would open the door to the entire evaluation, [and] if he can't cross on that then it leaves the testimony at, she didn't do it or that there wasn't full compliance[.] . . .

> Mr. Lucey: Can I withdraw the question that brought this whole mess forward and just limit it to . . . the witness . . . has complied [with the case plan in that she] submitted herself [to the evaluation by Dr. Duthie] . . . and signed the necessary releases and has done the parenting capacity evaluation and let me move on?

> The court: That's fine.

> Mr. Lucey: And can we strike the testimony beyond that?

> The court: Yes, she complied with submitting to [Dr. Duthie's] evaluation. That's where you want to limit it?

> Mr. Lucey: That's correct.

> The court: I'll allow that testimony to stand. Otherwise the question is withdrawn and the testimony is striken.

On appeal, respondent attempts to engage this Court in speculation as to the nature of Dr. Duthie's recommendations, and respondent's compliance or noncompliance with his recommendations, in an evaluation that was not admitted as evidence as a result of respondent's own objection, and determine, on mere conjecture, whether respondent's inability to cross examine Dr. Duthie might have prejudiced her. This, we decline to do. Respondent does not provide a specific argument as to why her inability to cross-examine Dr. Duthie prejudiced her. *See In re C.L.C.*, 171 N.C. App. at 443, 615 S.E.2d at 707 (holding that the respondent's general argument was insufficient to show prejudice because respondent does not "explain in what manner the delay prejudiced her"). While respondent may have lost the opportunity to question the psychologist because of the delay, we conclude that due to the lack of specificity as to how she was prejudiced, and plenary other evidence of record supporting the trial court's findings, respondent was not prejudiced by the delay in this regard.

**IN RE C.M., V.K., Q.K.**

[183 N.C. App. 398 (2007)]

Respondent also contends that her case plan was put on a "holding pattern[,]" and that she was prejudiced because she was entitled to a speedy resolution of the termination petition and to a speedy appeal of the order terminating her parental rights. We find this argument unconvincing. In the opinion of *In re C.L.C.*, this Court held that the respondent's general argument that "DSS ceased reunification but waited many months to initiate termination proceedings[,]" does not "explain in what manner the delay prejudiced her in light of the fact she chose not to take advantage of the opportunit[ies]" provided by the court for respondent to show progress. *Id.*, 171 N.C. App. at 445, 615 S.E.2d at 708. *In re C.L.C.* is persuasive authority as to respondent's general argument that the case plan was put on a "holding pattern[.]" Respondent here has failed to explain why the "holding pattern" prejudiced her, and the evidence tends to show the contrary: (1) that the delay was necessary for the court to determine whether respondent's parental rights should be terminated, and (2) that the delay was provided to enable respondent to demonstrate her fitness to parent. We also note that respondent did not, at any point, object to the delay. *See In re W.L.M.*, 181 N.C. App. 518, 522-23, 640 S.E.2d 439, 442-43 (2007) (holding that the delayed hearing on termination of respondent's parental rights was not prejudicial even though held one hundred and sixty-nine days after DSS filed the petition to terminate, because "[e]ach continuance granted by the trial court was necessary[,]" and "[a]t no time did respondent object to any delay or continuance"). In light of *In re C.L.C.* and *In re W.L.M.*, we conclude that respondent has failed to explain in this argument how the delay prejudiced her, and it is without merit.

We further conclude that the time delay and respondent's lost opportunity to question the psychologist did not prejudice respondent. This assignment of error is overruled.

[2] In her second argument, respondent contends that the trial court erred and abused its discretion by terminating her parental rights because its order was not properly supported by the findings of fact and conclusions of law. She argues the trial court failed to consider the likelihood of adoption (N.C. Gen. Stat. § 7B-1110(a)(2)) or that termination would aid in the accomplishment of the permanent plan for the juvenile. (N.C. Gen. Stat. § 7B-1110(a)(3)). We disagree.

Respondent's argument relies upon the current version of N.C. Gen. Stat. § 7B-1110(a) (2005), which is not applicable in this case. The 2005 amendments which added subdivisions (a)(1) through

(a)(6) to the statute were effective 1 October 2005 and applicable to petitions or actions filed on or after that date. Because DSS filed the petition to terminate respondent's parental rights on 23 June 2005, the relevant version of the statute required that:

> Should the court determine that any one or more of the conditions authorizing a termination of the parental rights of a parent exist, the court shall issue an order terminating the parental rights of such parent with respect to the juvenile unless the court shall further determine that the best interests of the juvenile require that the parental rights of the parent not be terminated.

N.C. Gen. Stat. § 7B-1110(a) (2003); *see also* 2005 N.C. Sess. Laws ch. 398, § 17.

If a trial court finds that at least one of the statutory grounds exists, it has discretion at the dispositional stage to terminate parental rights upon a finding that termination would be in the child's best interests. *In re Blackburn*, 142 N.C. App. 607, 613, 543 S.E.2d 906, 910 (2001). Its decision to terminate parental rights is then reviewed under an abuse of discretion standard. *In re Nesbitt*, 147 N.C. App. 349, 352, 555 S.E.2d 659, 662 (2001). Ample evidence in the record supports the three statutory grounds for termination found by the trial court. The trial court made multiple findings of fact regarding respondent's failure over a period of more than a year to demonstrate her ability to properly parent the children by implementing what she had been taught in the various programs which she had attended. Accordingly, we find no abuse of discretion by the trial court in its conclusion that termination of respondent's parental rights was in the best interests of the children and affirm its order terminating respondent's parental rights.

[3] Respondent has failed to argue her remaining assignments of error in her brief, and they are deemed abandoned. N.C. R. App. P. 28(b)(6).

AFFIRMED.

Judges GEER and LEVINSON concur.