BRYANT, Judge.
Where the trial court did not abuse its discretion in concluding that termination of parental rights was in the child's best interest, we affirm.
The Mecklenburg County Department of Social Services, Youth and Family Services Division ("YFS") filed a petition on 21 December 2011, alleging S.R.F.-H. ("Sammy")[1] was a neglected and dependent juvenile due to respondent's mental health problems and her lack of an alternative placement for Sammy. With respondent's consent, YFS obtained non-secure custody of Sammy, and he was subsequently placed with respondent's aunt, R.H. ("Ms. Howard"). Respondent was appointed a guardian ad litem to advocate for her interest in the juvenile matter.
After a hearing on 8 February 2012, the trial court entered an adjudication and disposition order concluding that Sammy was a neglected and dependent juvenile, due to respondent's "undefined/unaddressed symptoms of mental illness," "abuse of prescribed medication," and "inability to provide proper care." The court continued custody of Sammy with YFS, sanctioned his placement with a relative, granted respondent supervised visitation with Sammy, and ordered respondent to comply with a YFS Family Services Agreement.
The court conducted a review hearing on 16 July 2012 and entered an order continuing custody of Sammy with YFS after finding respondent was then placed at Durham Regional Hospital's psychiatric unit and that she had made minimal progress in managing her mental health illness. The court entered a permanency planning order on 4 February 2013, setting adoption as Sammy's plan of care, "given the child's age and the severity of [respondent's] mental illness." The court also found respondent had not made progress toward alleviating the conditions that led to Sammy's placement in care and that she "required community support services to assist her in caring for herself."
In a permanency planning order entered 27 June 2013, the court found that Ms. Howard and her husband were moving to Phoenix, Arizona and wished to take Sammy with them. The court further found that respondent's "capacity has been fluid," that she had two inpatient hospital admissions for psychiatric stabilization during the case thus far, and that "[h]er capacity to comprehend the proceedings has sometimes been completely rational; sometimes completely irrational." The trial court changed the permanent plan for Sammy to guardianship and granted Ms. Howard guardianship over Sammy.
On 4 October 2013, Ms. Howard informed the trial court that she and her husband lacked the resources to continue to care for Sammy, and requested the termination of her guardianship. Ms. Howard filed a motion to terminate guardianship on 4 November 2013. By order entered 6 December 2013, the court granted the motion and returned Sammy to YFS custody.
The trial court entered a permanency planning order on 10 June 2014, finding respondent had made significant progress with her mental health treatment. Nonetheless, the court ordered that Sammy remain in the custody of YFS and be placed in foster care while YFS assessed respondent's support system should she regress. The court also ordered that Sammy's permanent plan remain adoption with a concurrent plan of guardianship. The court conducted multiple permanency planning hearings over the next several months, and ultimately granted guardianship of Sammy to his foster mother, D.M. ("Ms. McKinley"), by order entered 12 June 2015. However, by 2 September 2015, Ms. McKinley was no longer willing to be Sammy's guardian and the trial court terminated her guardianship and returned custody of Sammy to YFS.
On 23 May 2016, the trial court entered another permanency planning order. The court found respondent was making progress under her Family Services Agreement and was living in a domestic violence shelter. However, respondent had also tested positive for marijuana, cocaine, and benzodiazepines, and had been discharged from a detox center for not following the rules. The court concluded that respondent had not adequately remedied the issues that led to Sammy's entry into custody with YFS, and that adoption and guardianship should remain the concurrent plans.
YFS filed a petition to terminate respondent's parental rights to Sammy on 22 July 2016, alleging grounds of neglect, failure to correct the conditions that led to Sammy's removal from her care, willful failure to pay a reasonable portion of the cost of Sammy's care, dependency, and willful abandonment. See N.C. Gen. Stat. § 7B-1111(a)(1)-(3), (6)-(7) (2015). After a hearing on 28 November 2016, the trial court entered an order on 4 January 2017, terminating respondent's parental rights to Sammy. The court found grounds to terminate respondent's parental rights based on neglect, failure to correct the conditions that led to Sammy's removal from her care, willful failure to pay a reasonable portion of the cost of Sammy's care, and dependency. The trial court further concluded that terminating respondent's parental rights was in Sammy's best interest. Respondent filed timely written notice of appeal from the order terminating her parental rights.
_________________________
Respondent's sole argument on appeal is that the trial court abused its discretion in concluding that terminating her parental rights was in Sammy's best interest. Respondent contends she has a strong bond with Sammy, has been a constant presence in Sammy's life, and although she may not be in a position to have full and unfettered custody of Sammy due to her mental health problems, she has diligently sought out mental health treatment throughout this case. Respondent argues that suddenly severing her relationship with Sammy is not in Sammy's best interest and constitutes an abuse of discretion on the part of the trial court. We disagree.
"After an adjudication that one or more grounds for terminating a parent's rights exist, the [trial] court shall determine whether terminating the parent's rights is in the juvenile's best interest." N.C. Gen. Stat. § 7B-1110(a) (2015). When determining whether it is in a juvenile's best interest to terminate parental rights, the trial court must consider factors set forth in N.C. Gen. Stat. § 7B-1110, which include the juvenile's age, the juvenile's likelihood of adoption, whether termination will accomplish the juvenile's permanent plan, the bond between the juvenile and the parent, the quality of any relationship between the juvenile and any potential adoptive parent, and any other relevant consideration. Id.§ 7B-1110(a)(1)-(6). "The decision to terminate parental rights is vested within the sound discretion of the trial [court] and will not be overturned on appeal absent a showing that the [trial court's] actions were manifestly unsupported by reason." In re J.A.A. & S.A.A., 175 N.C. App. 66, 75, 623 S.E.2d 45, 51 (2005) (citation omitted).
Here, in support of its conclusion that termination of respondent's parental rights is in Sammy's best interest, the trial court made findings of fact specifically addressing each of the Section 7B-1110(a) factors, including findings on YFS's efforts to place him with family members and respondent's longstanding mental health problems. The court found respondent had a close bond with Sammy and that they loved each other, but also that respondent was in the same position she was in when Sammy was removed from her care. Sammy and his foster mother were also found to have a positive bond, and the court found the foster mother had provided Sammy with the structure and consistency he needed after his removal from respondent's care in December 2011. The court found that Sammy's foster mother "is committed to him[,]" and that "[t]he likelihood of his adoption should he be free for adoption is very likely." The court noted that the goal for permanency is usually within twelve months after removal and that it is unfair to ask Sammy to wait indefinitely for respondent to address the concerns that led to his removal from her care. Respondent has not challenged any of the court's findings and they are binding on appeal. Koufman v. Koufman, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991).
Respondent has not shown that the trial court's best interest determination is manifestly unsupported by reason, and essentially asks this Court to reweigh the facts and come to a conclusion different from the conclusion reached by the trial court. This we will not do. See In re C.L.C., 171 N.C. App. 438, 448, 615 S.E.2d 704, 710 (2005) ("It was up to the trial court to decide the degree of progress made by the mother and whether these facts outweighed the mother's bond with her children"). We conclude the trial court's findings of fact reflect thoughtful and deliberate reasoning by the court and support its conclusion that termination of respondent's parental rights is in Sammy's best interest.
Respondent has not challenged the trial court's conclusion that grounds exist to terminate her parental rights to Sammy. Accordingly, we affirm the trial court's order terminating respondent's parental rights.
AFFIRMED.
Report per Rule 30(e).
Judges STROUD and ZACHARY concur.

Pseudonyms are used throughout for ease of reading and to protect the juvenile's identity. N.C. R. App. P. 3.1(b) (2017).