IN THE MATTER OF: M.K.B.
No. COA07-1044
North Carolina Court of Appeals
Filed January 15, 2008
This case not for publication
Robert W. Ewing for Respondent-Appellant.
Mecklenburg County Attorney's Office, by Tyrone C. Wade, for Petitioner-Appellee Mecklenburg County Youth and Family Services.
McGEE, Judge.
N.R. (Respondent) is the mother of the minor child M.K.B. Mecklenburg County Youth and Family Services (YFS) filed a juvenile petition on 5 August 2003 alleging M.K.B. to be neglected and dependent. Specifically, the petition alleged that Respondent, who suffers from bipolar disorder and schizophrenia, was unable to provide M.K.B. with proper care and supervision due in part to Respondent's mental health status. The trial court held an adjudicatory hearing on 24 September 2003 and entered an order adjudicating M.K.B. dependent with respect to Respondent on 14 October 2003. The trial court held a dispositional hearing on 30 October 2003 and ordered a concurrent plan for M.K.B. that included reunification with Respondent or adoption.
The trial court held periodic review hearings between October 2003 and August 2004 to monitor Respondent's progress with the reunification goals. Following a 31 August 2004 review hearing, the trial court entered an order changing M.K.B.'s permanent plan to adoption and relieving YFS of its reunification obligations. Respondent appealed from the 31 August 2004 review order. While Respondent's appeal was pending, the trial court held a permanency planning hearing on 24 February 2005 and issued an order continuing the permanent plan of adoption and setting a goal of termination of Respondent's parental rights.
Our Court dismissed Respondent's appeal on 21 March 2006 because the 31 August 2004 review order from which Respondent appealed was not a "final order" and, therefore, an appeal could not be taken. See In re M.B., 176 N.C. App. 766, 627 S.E.2d 352 (2006) (unpublished). Respondent filed a petition for discretionary review with the North Carolina Supreme Court, which the Supreme Court denied on 17 August 2006. See In re M.B., 360 N.C. 577, 635 S.E.2d 897 (2006).
Meanwhile, YFS filed a petition to terminate Respondent's parental rights on 17 April 2006. The trial court originally scheduled the termination hearing for 6 November 2006, but continued the case due to a concern regarding whether Respondent had been served notice of the hearing. Respondent requested further continuances on 11 January 2007 and 22 January 2007 in order to conduct additional discovery, but the trial court denied Respondent's motions. The trial court held termination hearings on 22 January 2007, 13-14 March 2007, 27-28 March 2007, and 4 May 2007, and entered an order terminating Respondent's parental rights on 28 June 2007. Respondent appeals.
Respondent argues that the trial court lacked subject matter jurisdiction over the termination proceedings because: (1) YFS filed the termination petition more than sixty days after the permanency planning review hearing, in violation of N.C. Gen. Stat. § 7B-907(e); and (2) the trial court failed to hold the termination hearing within ninety days of the filing of the termination petition, in violation of N.C. Gen. Stat. § 7B-1109(a). Respondent further contends that she was prejudiced by these delays. We disagree and affirm.

I.
Respondent first argues that the trial court lacked subject matter jurisdiction over the termination of parental rights action because YFS failed to file the termination petition within the statutory time limit. N.C. Gen. Stat. § 7B-907(e) (2005) provides:
If a proceeding to terminate the parental rights of the juvenile's parents is necessary in order to perfect the permanent plan for the juvenile, the director of the department of social services shall file a petition to terminate parental rights within 60 calendar days from the date of the permanency planning hearing unless the court makes written findings why the petition cannot be filed within 60 days.
In this case, the trial court held the permanency planning hearing on 24 February 2005. YFS did not file the termination petition until 17 April 2006, almost fourteen months after the permanency planning hearing, and almost a year past the statutory deadline.
At the time of M.K.B.'s permanency planning hearing, however, there existed an unresolved split in authority regarding a trial court's jurisdiction to proceed on a termination of parental rights petition while a respondent's appeal of a prior review order was pending. Compare In re Stratton, 159 N.C. App. 461, 583 S.E.2d 323, disc. review denied, 357 N.C. 506, 588 S.E.2d 472 (2003) (dismissing the respondent's appeal of a trial court order adjudicating his minor children neglected and dependent because the appeal was rendered moot when the trial court subsequently entered an order terminating the respondent's parental rights), with In re Hopkins, 163 N.C. App. 38, 42, 592 S.E.2d 22, 25 (2004), disc. review granted for purposes of remand by In re D.M.H., 359 N.C. 852 (2005) (holding that the trial court exceeded its statutory authority by entering a termination order while the respondent's appeal from an earlier permanency planning review order was still pending). As a practical matter, YFS was unable to proceed with a termination petition until either (a) the jurisdictional question was answered by our Supreme Court, or (b) Respondent's appeal from the 31 August 2004 review order came to an end.
The jurisdictional issue was settled by our Supreme Court on 1 July 2005. See In re R.T.W., 359 N.C. 539, 553, 614 S.E.2d 489, 498 (2005), superseded by N.C. Gen. Stat. § 7B-1003(b)(1) (2005) (holding that a trial court retains jurisdiction to consider a termination of parental rights petition during the pendency of a custody order appeal in the same case). Given the unique legal and procedural circumstances in this case, Respondent concedes that the sixty-day deadline in N.C.G.S. § 7B-907(e) was tolled until the Supreme Court's 1 July 2005 ruling in In re R.T.W. Therefore, at the very latest, YFS was required to file its termination petition by 1 September 2005. Even given this extended deadline, however, YFS filed the termination petition some seven and one-half months late.
Respondent contends that this delay rendered the termination petition "defective and a nullity," thus failing to confer subject matter jurisdiction on the trial court. However, this Court has previously held that the time limit in N.C.G.S. § 7B-907(e) "is directory rather than mandatory and thus, not jurisdictional." In re B.M., 168 N.C. App. 350, 354, 607 S.E.2d 698, 701 (2005). Failure to adhere to a statutory time limit in a juvenile case is not reversible error per se. Rather, a respondent who alleges noncompliance with a time limit in the Juvenile Code must demonstrate that he or she was prejudiced by the delay. See, e.g., In re C.L.C., 171 N.C. App. 438, 443, 615 S.E.2d 704, 707 (2005), aff'd per curiam in part and disc. review improvidently allowed in part, 360 N.C. 475, 628 S.E.2d 760 (2006) (holding that "time limitations in the Juvenile Code are not jurisdictional . . . and do not require reversal of orders in the absence of a showing by the appellant of prejudice resulting from the time delay").
Respondent also contends, however, that she and other parties were prejudiced as a result of YFS's seven month delay in filing the termination petition. Respondent alleges that: Respondent was prejudiced because she was entitled to a speedy resolution of the termination of parental rights proceedings; M.K.B. was prejudiced because she was entitled to a "permanent plan of care at the earliest possible age," see N.C. Gen. Stat. § 7B-1100(2) (2005); and Respondent, M.K.B., and M.K.B.'s foster parents were all prejudiced because they were not given closure of this matter in a timely manner. We acknowledge that lack of closure, lack of a permanent plan, and lack of a speedy resolution are all natural consequences of N.C.G.S. § 7B-907(e) violations. However, these consequences alone are insufficient to demonstrate prejudice. As noted above, juvenile code timing violations are not prejudicial per se, and Respondent's allegations do not contain a specific showing of prejudice apart from the mere fact that a delay has occurred.
In addition to these generic allegations of prejudice, however, Respondent also alleges that she was prejudiced by the N.C.G.S. § 7B-907(e) violation because the delay limited Respondent's contact with M.K.B. Respondent notes that between August 2003 and January 2007, she was only allowed to visit with her daughter for one hour each week. The trial court found that Respondent did attend these visits. However, the trial court also found that Respondent did not bond with her daughter during these visits, and the trial court used these findings to support its order terminating Respondent's parental rights. Respondent contends that the weekly one-hour visits were insufficient to allow Respondent to bond with M.K.B. According to Respondent, the seven month delay in the current case prejudiced Respondent's relationship with M.K.B. because their contact was limited for an unnecessary amount of time, which made it more difficult for Respondent to establish a bond with M.K.B. by the January 2007 termination hearing. We disagree. At Respondent's termination hearing, Candice Cherrybone (Ms. Cherrybone), the Guardian ad Litem appointed for M.K.B., testified that she witnessed nearly thirty visits between Respondent and M.K.B., beginning in August 2003. According to Ms. Cherrybone, the interactions between Respondent and M.K.B. "were that of a stranger holding another person's child." Ms. Cherrybone had serious concerns regarding Respondent's lack of concern for, and engagement with, her child. Ms. Cherrybone also testified that she did not observe any bond between Respondent and M.K.B. A majority of Ms. Cherrybone's observations occurred during the six month period following August 2003. Based on Ms. Cherrybone's testimony, the trial court made the following findings of fact:
30. [Respondent] attended weekly supervised visits with [M.K.B.]. . . From August 2003 until January 2004, the Guardian ad Litem volunteer observed every supervised visit between [Respondent] and [M.K.B.] During this time, Ms. Cherrybone did not observe any bond between [Respondent] and [M.K.B.]. . . [T]he Court finds as fact that [Respondent] appeared to be unengaged with [M.K.B.]. . .
31. [Between January 2004 and late 2005], Ms. Cherrybone would attend the visits at least one time per month. Again, based on Ms. Cherrybone's observations which the Court finds as fact there was no bond between [Respondent] and [M.K.B.]
32. . . . From the end of 2006 until the termination of parental rights hearing, Ms. Cherrybone observed only one visit. The visit occurred in January 2007. At that time, Ms. Cherrybone did not observe a bond between [Respondent] and [M.K.B.]
The trial court's findings clearly demonstrate that Respondent's difficulty in bonding with M.K.B. began as early as August 2003, and continued through September 2005  the time at which YFS should have filed the termination petition. These long-standing difficulties continued through the delay period and lasted until Respondent's termination hearing. Given this background, Respondent has made no showing that the delay caused by the N.C.G.S. § 7B-907(e) violation had any specific prejudicial effect on her existing relationship with M.K.B.
Finally, Respondent argues that she was prejudiced by the N.C.G.S. § 7B-907(e) violation because she stopped receiving mental health assistance from YFS. According to Respondent, YFS assisted Respondent with her mental health issues while pursuing reunification efforts between October 2003 and August 2004. As a result, Respondent's mental health status was more stable than it previously had been. However, according to Respondent, her mental health deteriorated significantly after YFS ceased reunification efforts, to the point where Respondent could not present a viable defense in the termination hearing. Respondent alleges that the seven month delay contributed to this situation because it increased the amount of time she was without mental health support. We disagree that the delay prejudiced Respondent in this regard. Had YFS followed the mandates of N.C.G.S. § 7B-907(e), it would have filed the termination petition by 1 September 2005, meaning that the termination hearing would have been held by 1 December 2005. See N.C. Gen. Stat. § 7B-1109(a) (2005) (requiring that the termination hearing must be held no later than ninety days from the filing of the termination petition). Even had there been no delay, then, Respondent would have been without YFS services for some fifteen months after the trial court first directed YFS to cease reunification efforts on 31 August 2004. Respondent alleges that her mental health declined during the period she was without support services, but she does not suggest that the seven month delay alone was responsible for the degree of deterioration that supposedly rendered her unable to present a valid defense at her termination hearing. Further, the trial court found that Respondent had not been seeking treatment elsewhere, although such treatment was available, and that Respondent had not been taking recommended medications for her mental illnesses. Based on these findings, the trial court concluded that Respondent "has not properly availed herself [of] any of the services necessary to enable her to properly parent [M.K.B.] either now or in the foreseeable future." Respondent does not argue that she was unable to access alternative support services, nor does she claim that YFS support services were the only services that could have preserved her improved mental health status. Therefore, Respondent has failed to demonstrate that she was prejudiced as a result of not having received YFS mental health services.
In sum, Respondent has not demonstrated that she suffered prejudice as a result of the timing violation. We therefore hold that YFS's failure to file the termination petition within the time frame required by N.C.G.S. § 7B-907(e) is not a ground for reversal. Respondent's assignment of error is overruled.

II.
Respondent next argues that the trial court lacked subject matter jurisdiction over the termination of parental rights action because the trial court failed to hold the termination hearing within the statutory time limit. N.C.G.S. § 7B-1109(a) requires that "[t]he hearing on the termination of parental rights . . . shall be held . . . no later than 90 days from the filing of the [termination] petition." In the current case, YFS filed the termination petition on 17 April 2006. By this time, however, the General Assembly had amended the Juvenile Code to effectively overturn our Supreme Court's decision in In re R.T.W. See N.C. Gen. Stat. § 7B-1003(b)(1) (2005) (divesting trial courts of jurisdiction to proceed with termination actions during pending appeals of prior orders entered in abuse, neglect, or dependency actions). Therefore, the trial court was unable to consider the termination petition until our Supreme Court denied Respondent's petition for discretionary review on 17 August 2006. The trial court originally calendared Respondent's termination hearing on 6 November 2006, within the ninety day deadline. However, the trial court continued the hearing until 22 January 2007 due to a misunderstanding concerning whether the clerk's office had served Respondent with notice of the hearing. The trial court then held the termination hearing on 22 January 2007, five months after YFS filed the termination petition and two months past the statutory deadline in N.C.G.S. § 7B-1109(a). The trial court extended the hearing over multiple days in order to give the parties adequate time to present their cases.
Respondent first argues that the trial court lacked subject matter jurisdiction over the termination action due to its failure to hold the termination hearing by the statutory deadline. For the reasons stated in Part I, Respondent's argument is without merit. The time limitations in the Juvenile Code are not jurisdictional and do not require reversal of a termination order in the absence of prejudice. See, e.g., In re C.L.C., 171 N.C. App. at 443, 615 S.E.2d at 707.
Respondent next alleges that she was prejudiced by the trial court's delay in holding the termination hearing. However, Respondent merely reiterates her previous allegations of prejudice. As addressed in Part I, we conclude that Respondent's allegations are without merit. Our conclusion is further supported by the fact that Respondent actually attempted to prolong the delay between the filing and hearing of the termination petition. Respondent moved for a continuance of the termination hearing on 11 January 2007 in order to conduct additional discovery, and again moved for a continuance on 22 January 2007 for the same reason. The trial court denied both motions, concluding that Respondent had failed to show good cause for any further delay.
In sum, Respondent has not demonstrated that she suffered prejudice as a result of the timing violation. We therefore hold that the trial court's failure to hold the termination hearing within the time frame required by N.C.G.S. § 7B-1109(a) is not a ground for reversal. Respondent's assignment of error is overruled.
Respondent's remaining assignments of error were not argued in her brief and are deemed abandoned. See N.C.R. App. P. 28(b)(6).
Affirmed.
Judges HUNTER and ARROWOOD concur.
Report per Rule 30(e).