IN THE MATTER OF: H.M. and N.M.
No. COA08-1073
Court of Appeals of North Carolina
Filed February 17, 2009
This case not for publication
Robin E. Strickland, for respondent-appellant mother.
Patricia Kay Gibbons, for respondent-appellant father.
Pamela Newell Williams, for appellee Guardian ad Litem.
MARTIN, Chief Judge.
Respondent-mother and respondent-father (collectively "respondents") appeal from an adjudication and disposition order terminating their parental rights to their minor children H.M. and N.M. We affirm.
On 17 November 2003, a counselor with the Intensive Family Preservation Services ("IFPS") visited respondents' house to respond to a 24 September 2003 substantiated report received by the Perquimans County Department of Social Services ("Perquimans DSS") alleging neglect of at least one of the minor children in respondents' house. During the course of her visit, the IFPS counselor determined that H.M. was in need of medical attention forwhat was later determined to be an ear infection and bronchitis__both of which were as yet untreated by respondents__and in need of a developmental evaluation. The IFPS counselor also observed that "the home was filthy," with "a sick dog in the home along with farm animals living outside in the front yard of the house." She further observed that there was no food, no running water, and no electricity in the house; these observations were consistent with those made some months later by the minor children's appointed guardian ad litem, who found that respondents' house "was more than just unkempt. It was littered and cluttered with debris and garbage, evidence that__that animals other than domestic pets had been kept in the house and that there was animal manure and that kind of thing on__on the floor." At the time of her November 2003 visit, the IFPS counselor helped respondent-mother clean the house, showed respondent-mother instructional parenting videos and discussed them with her, and advised respondent-father about which types of supplies he could purchase to make some needed repairs to the house.
In February 2004, an environmental health specialist with the Albemarle Regional Health Services visited respondents' house at the request of respondent-mother to investigate an occurrence of mold found growing on the wall near a leak in the roof. While he was in the house, the health specialist also noticed "a large population of roaches," food waste on the kitchen floor, dirty clothes, paper, and other debris throughout the house, and reported that he was concerned that the conditions "could lead to asthma triggers in the home" and "felt that the environment was conducive to rodents," which "could carry several diseases that could spread to children." The health specialist further reported that, although there are "no sanitation standards for private homes enforced by the Albemarle Regional Health Services, if this had been a group home under inspection by the Health Department, he would have had to give it a poor rating and would have suggested that the licensing agency close it." He is said to have reported his findings to the Perquimans DSS.
During the same time period, a registered nurse who serves as a children's services coordinator with the Albemarle Regional Health Services visited respondents' house to evaluate H.M. and to review an Ages and Stages questionnaire completed by respondents about H.M. The nurse reported that H.M. was said to ingest such non-food items as "crayons, cigarettes [sic] filters, leaves and straw almost everyday if not vacuumed from the floor." As a result of her observations and analysis, the nurse recommended a mental health evaluation for H.M. However, respondents "refused to accept the referral" for the mental health evaluation, and, further, refused to sign the Family Service Case Plan prepared by the Perquimans DSS.
On 13 May 2004, the Perquimans County District Court heard a petition alleging that H.M. and N.M. were neglected and dependent. Following the hearing, the court entered a consent order in which respondents agreed that it was in their minor children's best interests to be placed with their maternal grandparents. Respondents agreed to comply with the Objectives and Activities set out in the Family Service Case Plan proposed by the Perquimans DSS, which required that respondents continue the cleaning routine taught by the IFPS counselor, learn age-appropriate child development skills, develop coping and socialization skills, make and meet appointments for mental health evaluations and follow any recommendations resulting from those evaluations, and allow the minor children to attend day care, receive speech therapy, and enroll in a toddler development plan.
Following a 22 November 2004 hearing, the Perquimans County District Court entered an order signed on 3 January 2005 in which respondents admitted as alleged that "they have failed to provide a proper and suitable home for the juveniles and that the home of the juveniles and the immediate surrounding yard of the home of the juveniles were unsanitary at the time of the filing of the petition and remain in that condition" as of the date of the hearing. Respondents further admitted that "this fact [wa]s sufficient for a finding by the court of neglect regarding the juveniles." The order went on to state that respondents stipulated and "agree[d] that it would be in the best interests of the juveniles that they be placed in the guardianship of their maternal grandparents." Accordingly, the minor children did not live with respondents following the November 2004 hearing. Instead, respondents maintained intermittent contact with their minor children, and failed to make progress in completing the case plan. About one year later, Pasquotank County Department of Social Services ("Pasquotank DSS") received a report from Child Protective Services that, on 7 September 2005, H.M., "age 3, was seen walking alone down the street at 8:00 p.m.," although his maternal grandmother and then-legal guardian was not aware that he had left the house. After another report from Child Protective Services was substantiated later that month, the Pasquotank DSS determined that it would provide ongoing case management services to the grandparents of the minor children. On 3 May 2006, the Pasquotank DSS filed a petition alleging that the minor children were neglected and dependent. After hearing the matter, the Pasquotank County District Court entered an Adjudication and Disposition Order said to be entered with the consent of the parties__including both respondents and the minor children's maternal grandparents__on 2 October 2006, adjudicating the minor children as dependent pursuant to N.C.G.S. § 7B-101(9), and determining that "[i]t would be in the best interest of the minor children that their custody be awarded to the Pasquotank [DSS]."
In January 2008, Pasquotank DSS petitioned the court to terminate respondents' parental rights as to both minor children. As grounds for termination, Pasquotank DSS alleged: (1) respondents neglected the minor children as defined by N.C.G.S. § 7B-101; (2) respondents left their minor children in foster care or placement outside the home for more than twelve months without making reasonable progress toward correcting the conditions that led to removal; (3) the minor children were in the custody of Pasquotank DSS, and that for a continuous period of six months prior to the filing of the petition, respondents failed to pay a reasonable portion of the costs of care; and (4) respondents' parental rights to another child had been terminated involuntarily and respondents lacked the ability or willingness to establish a safe home. Pasquotank DSS also included copies of 1998 and 2000 orders terminating respondents' parental rights to two other children in the State of Oregon.
The case came on for hearing on 5 June 2008 in Pasquotank County District Court. At the hearing, respondent-father testified that he still lives in the same house he occupied in 2004, and has a cocaine addiction. Respondent-father also has a criminal record, including convictions for drug offenses and impaired driving. Respondent-mother left the house she had shared with respondent on 31 December 2007.
On 20 June 2008, nunc pro tunc 5 June 2008, the trial court signed an order terminating respondents' parental rights as to both minor children. At adjudication, the trial court terminated respondent-father's parental rights pursuant to N.C.G.S. § 7B-1111(a)(1), (2), (3), and (9), and terminated respondent-mother's parental rights pursuant to N.C.G.S. § 7B-1111(a)(1), (2), and (9). At disposition, the trial court found that it was in the minor children's best interests to terminate respondents' parental rights. Respondents appealed.
We begin by addressing the first of two arguments raised by both respondents. First, citing N.C.G.S. § 7B-507, respondents each contend the trial court erred when it failed to make a finding that Pasquotank DSS made reasonable efforts toward reunification. We disagree.
N.C.G.S. § 7B-507 requires, in relevant part:
(a) An order placing or continuing the placement of a juvenile in the custody or placement responsibility of a county department of social services, whether an order for continued nonsecure custody, a dispositional order, or a review order:
. . . .
(2) Shall contain findings as to whether a county department of social services has made reasonable efforts to prevent or eliminate the need for placement of the juvenile, unless the court has previously determined under subsection (b) of this section that such efforts are not required or shall cease; [and]
(3) Shall contain findings as to whether a county department of social services should continue to make reasonable efforts to prevent or eliminate the need for placement of the juvenile, unless the court has previously determined or determines under subsection (b) of this section that such efforts are not required or shall cease . . . .
N.C. Gen. Stat. § 7B-507(a)(2), (3) (2007) (emphasis added). Thus, a court has the authority to order a county department of social services to cease reunification efforts if it makes a written finding that "[s]uch efforts clearly would be futile or would be inconsistent with the juvenile's health, safety, and need for a safe, permanent home within a reasonable period of time." N.C. Gen. Stat. § 7B-507(b)(1). While the trial court did not make a finding that Pasquotank DSS made reasonable efforts toward reunification in its June 2008 termination order, we conclude that it was not required to do so because of the Perquimans County District Court order signed on 3 January 2005. In this order, consented to by respondents, the court concluded that guardianship would be "the permanent plan for the juveniles," and ordered that Perquimans DSS and the guardian ad litem should be "relieved of further responsibility in regard to the said juveniles." The court also concluded that guardianship was "the best plan of care to achieve a safe, permanent home for the juveniles within a reasonable period of time." This order, therefore, properly relieved DSS of continuing efforts toward reunification, pursuant to N.C.G.S. § 7B-507(b)(1). Therefore, according to the plain language of N.C.G.S. § 7B-507(a)(2) and (3), the trial court was not required to make findings concerning reunification efforts in its 2008 termination order. Accordingly, this assignment of error is overruled.
Both respondents also contend that the trial court committed prejudicial error by failing to conduct a custody review hearing within ninety days of the October 2006 adjudication and disposition order which awarded custody of the minor children to Pasquotank DSS. We disagree.
"In any case where custody is removed from a parent, guardian, custodian, or caretaker the court shall conduct a review hearing within 90 days from the date of the dispositional hearing and shall conduct a review hearing within six months thereafter." N.C. Gen. Stat. § 7B-906(a) (2007). However, "this Court has held that time limitations in the Juvenile Code are not jurisdictional . . . and do not require reversal of orders in the absence of a showing by the appellant of prejudice resulting from the time delay." In re C.L.C., K.T.R., A.M.R., & E.A.R., 171 N.C. App. 438, 443, 615 S.E.2d 704, 707 (2005), disc. review improvidently allowed, 360 N.C. 475, 628 S.E.2d 760 (2006) (per curiam).
The record here does not establish that the trial court conducted the statutory review hearings following the award of custody of the minor children to Pasquotank DSS in 2006, but respondents have not demonstrated any prejudice that resulted from the absence of such hearings. The record shows that following the 2006 order, respondents failed to visit their minor children or find stable housing. Respondent-mother ultimately relocated to another state with a new boyfriend and avoided contact with Pasquotank DSS. At the time of the termination hearing, respondent-father's house still did not have electricity or running water. Thus, respondents did not improve their circumstances following the award of custody of the minor children to Pasquotank DSS, and we hold that respondents have failed to demonstrate that the trial court's failure to hold custody review hearings caused them any prejudice.
Next, we consider several issues raised only by respondent-father, beginning with his contention that the district court lacked jurisdiction because it failed to hold the termination hearing within ninety days of the filing of the petition. Again, we disagree.
The hearing on the termination of parental rights "shall be conducted by the court sitting without a jury and shall be held in the district at such time and place as the chief district court judge shall designate, but no later than 90 days from the filing of the petition or motion." N.C. Gen. Stat. § 7B-1109(a) (2007). Again, however, "time limitations in the Juvenile Code are not jurisdictional" and "do not require reversal . . . in the absence of a showing by the appellant of prejudice." See In re C.L.C., 171 N.C. App. at 443, 615 S.E.2d at 707.
In this case, the hearing took place outside the ninety-day statutory limit, but respondent-father has failed to demonstrate that he was prejudiced by the delay. Respondent-father voluntarily relinquished custody of the minor children in May 2004, more than three years before Pasquotank DSS filed the petition to terminate his parental rights. There is no evidence to suggest that respondent-father would have made substantial progress had the hearing been held within ninety days of the filing of the petition. Thus, although the court did not hold the hearing within the ninety-day time period required by N.C.G.S. § 7B-1109(a), we hold that respondent-father was not prejudiced by this error.
Next, we address respondent-father's contentions that the trial court improperly considered hearsay evidence and that his trial counsel rendered ineffective assistance of counsel when hefailed to object to that hearsay. We dismiss these assignments of error.
"An assignment of error is sufficient if it directs the attention of the appellate court to the particular error about which the question is made, with clear and specific record or transcript references." N.C.R. App. P. 10(c)(1) (2009) (emphasis added). "The function of all briefs required or permitted by these rules is to define clearly the questions presented to the reviewing court and to present the arguments and authorities upon which the parties rely in support of their respective positions thereon." N.C.R. App. P. 28(a) (2009).
Here, respondent-father never identifies the specific evidence or testimony that he claims is hearsay. Rather, respondent-father's assignments of error 4 and 5 allege only that "inadmissible hearsay" was admitted at the hearing, and cites to transcript pages 20-33. In his brief, respondent-father does not clarify the issue, but broadly contends that, "[i]n the entire transcript of the termination trial, [respondent-father's] counsel allowed hearsay evidence to be admitted without objecting." "It is clear that much of the information admitted into evidence was inadmissible hearsay under Evidence Rule 802 that would have been excluded upon proper objection by counsel." Thus, respondent-father's failure to identify the evidence he contends is "inadmissible hearsay" prevents this Court from reviewing his contention. See Joker Club, L.L.C. v. Hardin, 183 N.C. App. 92, 94-95, 643 S.E.2d 626, 628 (2007), disc. review denied, 362 N.C.176, 658 S.E.2d 272 (2008). Accordingly, these assignments of error are dismissed.
Respondent-father also challenges the trial court's findings of fact and conclusions of law made during the adjudication stage of the proceedings, arguing that no grounds existed to terminate his parental rights. We disagree.
In termination of parental rights cases, a trial court's findings of fact must be supported by clear, cogent, and convincing evidence. See In re Shepard, 162 N.C. App. 215, 221, 591 S.E.2d 1, 6, disc. review denied, 358 N.C. 543, 599 S.E.2d 42 (2004). This "standard is greater than the preponderance of the evidence standard required in most civil cases, but not as stringent as the requirement of proof beyond a reasonable doubt required in criminal cases." In re Montgomery, 311 N.C. 101, 109-10, 316 S.E.2d 246, 252 (1984), later proceeding, 77 N.C. App. 709, 336 S.E.2d 136 (1985).
In the adjudicatory stage, the burden is on the petitioner to prove that at least one ground for termination exists by "clear, cogent, and convincing evidence." See N.C. Gen. Stat. § 7B-1109(f); see also In re Blackburn, 142 N.C. App. 607, 610, 543 S.E.2d 906, 908 (2001). Review in the appellate courts is limited to determining whether clear and convincing evidence exists to support the findings of fact, and whether the findings of fact support the conclusions of law. See In re Huff, 140 N.C. App. 288, 291, 536 S.E.2d 838, 840 (2000), disc. review denied, 353 N.C. 374, 547 S.E.2d 9 (2001). "`[F]indings of fact made by the trial court. . . are conclusive on appeal if there is evidence to support them.'" In re H.S.F., 182 N.C. App. 739, 742, 645 S.E.2d 383, 384 (2007) (alteration and omission in original) (quoting Hunt v. Hunt, 85 N.C. App. 484, 488, 355 S.E.2d 519, 521 (1987)).
At the outset, we note that respondent-mother has not challenged the trial court's findings of fact or conclusions of law in the adjudication stage. Thus, those findings are binding on appeal as to respondent-mother. As to respondent-father, although the trial court concluded that grounds existed pursuant to N.C.G.S. § 7B-1111(a)(1), (2), (3), and (9) to terminate respondent-father's parental rights, we find it dispositive that the evidence is sufficient to support termination of his parental rights under N.C.G.S. § 7B-1111(a)(9), since respondent-father's parental rights to another child were previously terminated by a court of competent jurisdiction. See, e.g., In re D.B., C.B., 186 N.C. App. 556, 561, 652 S.E.2d 56, 60 (2007) (stating that "the order of termination will be affirmed if the court's conclusion with respect to any one of the statutory grounds is supported by valid findings of fact"), aff'd, 362 N.C. 345, 661 S.E.2d 734 (2008). In Adjudication Finding of Fact 44, the trial court found that respondent-father's parental rights to another child, A.M., were terminated in 2000 in the State of Oregon. The order terminating respondent-father's parental rights is part of the record on appeal, and respondent-father admitted to the prior termination of his parental rights in his testimony. Respondent-father's challenges to other findings of fact and conclusions of law, therefore, have no impact on the determination that grounds existed to terminate his parental rights, and we find that the trial court properly found that grounds existed to terminate respondents' parental rights.
Finally, respondents each contend that the trial court abused its discretion when it found that it was in the minor children's best interests to terminate their parental rights. We disagree.
Once the trial court determines that a ground for termination exists, it moves on to the disposition stage, where it must determine whether termination is in the best interest of the child. See N.C. Gen. Stat. § 7B-1110(a) (2007). The court's decision at this stage is reviewed under an abuse of discretion standard. See In re Anderson, 151 N.C. App. 94, 98, 564 S.E.2d 599, 602 (2002).
In determining the best interests of the child, the court must consider:
(1) The age of the juvenile.
(2) The likelihood of adoption of the juvenile.
(3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
(4) The bond between the juvenile and the parent.
(5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.
(6) Any relevant consideration.
N.C. Gen. Stat. § 7B-1110(a).
We conclude that the trial court made findings of fact addressing these statutory factors. First, the trial court found that H.M. was six years old and N.M. was eight years old. The trial court found that the likelihood of adoption for the minor children was unknown, but that terminating respondents' parental rights "would be a major step towards permanency . . . and legally clear [the minor children] for adoption." The trial court also found that the minor children demonstrated indifference toward their parents when they were asked about them by the guardian ad litem, and that neither respondent had taken any significant steps to work toward reunification. Respondents' lack of progress dated back more than three years. Thus, the trial court's findings demonstrate that it considered the relevant factors, and, given respondents' demonstrated lack of progress on their case plan and lack of effort toward reunification, we hold that it did not abuse its discretion when it terminated respondents' parental rights.
Affirmed.
Judges WYNN and MCGEE concur.
Report per Rule 30(e).